IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-09-0219 |
| TODD BELL, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Defendant Todd Bell ("Bell") is serving a 384-month sentence arising from his involvement in a string of armed robberies that occurred between December 2008 and March 2009. (Judgment 1–2, ECF No. 138.) On August 2, 2010, Bell plead guilty to two counts of Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). (Arraignment 1, ECF No. 118.) He is serving his sentence in FCI Bennettsville, South Carolina.

Currently pending is Bell's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 300).[1] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Bell's Motion for Sentence Reduction (ECF No. 300) is **DENIED** with respect to compassionate release and his request for a time served sentence, but is **GRANTED** as to a sentence reduction. After consideration of the severity of Bell's crimes and his conduct while incarcerated, a time served

---

[1] Bell's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 252), as well as a related motion (ECF No. 274), have been withdrawn by Bell and were previously dismissed. (Notice of Dismissal, ECF No. 322.)

1

sentence would clearly not be appropriate. However, in light of Congress' directive to avoid unwarranted sentence disparities between similarly-situated defendants, this Court concludes that a sentence reduction is appropriate in light of a sentence reduction accorded to a co-defendant in this case. For the reasons set forth below, Bell's total sentence will be reduced from 384 months to 332 months.[2]

## BACKGROUND

Bell engaged in a string of armed robberies in the Baltimore metropolitan area from approximately December 2008 to March 2009. (Presentence Investigative Report ("PSR") ¶¶ 7–8 *SEALED*.) During these robberies, Bell and his co-conspirators Trevon Jones ("Jones") and Quindell Ford ("Ford") stole tens of thousands of dollars from businesses that engage in interstate commerce and injured multiple victims. (*Id.*) A federal grand jury issued an Indictment on September 3, 2009, charging Bell with four counts. (ECF No. 28.) On August 2, 2010, Bell pleaded guilty to Counts Three and Five of the Indictment, charging him with Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) and (A)(ii). (PSR ¶¶ 1–2.)

Bell subsequently filed a Motion to Withdraw his guilty plea on October 7, 2010, which this Court denied. (ECF Nos. 133, 137.) On October 12, 2010, Bell was sentenced as a career offender under the Armed Career Criminal Act, 18 U.S.C. § 924, due to the two charges of armed robbery brought against him. (PSR ¶¶ 19, 20, 26; Judgment 1–2.) This Court sentenced Bell to 84 months as to Count Three and 300 months as to Count Seven, to be served

---

[2] Bell's sentence as to Count Five will be reduced from 300 months to 248 months. For the reasons outlined below, Bell's consecutive sentence as to Count Three of 84 months will not be reduced.

2

consecutively for a total of 384 months' imprisonment followed by a three-year term of supervised release. (Judgment 2.) Bell filed a timely appeal, and the United States Court of Appeals for the Fourth Circuit affirmed Bell's conviction on November 2, 2010. (ECF Nos. 141, 178.)

On January 20, 2011, Bell filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, which this Court dismissed without prejudice as premature due to the pending appeal before the Fourth Circuit on January 25, 2011. (ECF Nos. 166, 168.) Following the Fourth Circuit's affirmance, Bell filed another Motion to Vacate pursuant to § 2255 (ECF No. 184) on October 12, 2012. This Court denied Bell's § 2255 Motion on September 25, 2013 (ECF Nos. 211, 212), and the Fourth Circuit dismissed his § 2255 appeal and denied a certificate of appealability. (ECF No. 224.) However, the Fourth Circuit subsequently authorized Bell to file a successive § 2255 motion, which he did on June 1, 2016. (ECF Nos. 251, 252.) That motion was withdrawn by Bell on May 13, 2022. (ECF Nos. 322, 323.) Bell filed the instant Motion for Compassionate Release/Sentence Reduction on April 6, 2021. (ECF No. 300.)

This motion is ripe for review.

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194 (the "First Step Act" or the "Act"), established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with a district court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and

compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction, and after weighing the factors presented in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i).

### I. Administrative Exhaustion Requirements

On October 6, 2020, Bell sent a letter to the warden of FCI Bennettsville, requesting compassionate release on the same grounds alleged in this motion. (Inmate Request to Staff 1, ECF No. 300-1.) On October 16, 2020, the warden denied Bell's request. (*Id.* at 2.) Bell's Motion for Compassionate Release/Sentence Reduction was filed on April 6, 2021, more than thirty days after the filing of his initial request to the warden. (ECF No. 300, at 13.) Accordingly, sufficient time has elapsed, and this Court has authority to consider his motion. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (finding that a prisoner may not file a motion for compassionate release with a district court until thirty days have elapsed since the warden received their petition).

### II. Extraordinary and Compelling Reasons

The United States Sentencing Commission (the "Commission") is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). The Commission has

4

determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," faces extraordinary and compelling circumstances that may justify release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized the BOP to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the BOP's regulations constrain this Court's analysis. As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the BOP's authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020); *accord United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding that "the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'"). Bell argues that he is serving a disproportionately long sentence that is driven by the "stacking" of his two § 924(c) charges. (Bell Mot. 4–8, ECF No. 300.) The petitioner claims that under recent precedent in this circuit

5

and Congress' revised language in the First Step Act, he would be eligible for a lesser sentence if he were sentenced today.

District courts have broad discretion to consider all relevant information at a sentencing hearing to fashion an appropriate remedy. *See Dean v. United States*, 581 U.S. 62, 66 (2017). This discretion extends to later proceedings which may modify an original sentence, *Concepcion v. United States*, 142 S. Ct. 2389, 2399 (2022). The Supreme Court has recently made clear "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion*, 142 S. Ct. at 2404; *see also United States v. Brice*, No. 21-6776, 2022 WL 3715086, at *2 (4th Cir. Aug. 29, 2022) (explaining that nothing in the First Step Act prohibits district courts in this circuit from considering nonretroactive changes to the sentencing guidelines when assessing whether to reduce a sentence). Thus, this Court will consider changes in the law surrounding § 924(c) sentencing when considering Bell's motion.

In support of his motion for sentence reduction, the petitioner points to recent precedent and changes in the law which demonstrate that the stacking of 18 U.S.C. § 924(c) charges, such as in Bell's case, no longer carries a twenty-five-year mandatory minimum sentence. At the time Bell was convicted and sentenced, "Section 924(c) was interpreted as prescribing a 5-year mandatory minimum for a first conviction, and a consecutive 25-year term for any ["second or subsequent"] conviction—even if obtained in the same case." *United States v. Ramos*, Crim. No. PJM-04-293, 2021 WL 826304, at *1 (D. Md. Mar. 4, 2021). "The First Step Act ended this practice, known as sentence 'stacking,' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case

and 'has become final.'" *McCoy*, 981 F.3d at 275; *accord United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020) ("Under the First Step Act . . . the 25-year mandatory minimum is reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution."). Accordingly, the Fourth Circuit has held that "the severity of a [stacked] § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief." *McCoy*, 981 F.3d at 285–86; *accord Concepcion*, 142 S. Ct. at 2404. In the instant case, Bell plead guilty to Counts Three and Five of the indictment. Both counts involved charges under § 924(c), with the former carrying a sentence of seven years, and the latter a sentence of twenty-five years. Because this Court would no longer be required to impose a 32-year mandatory minimum sentence and would instead have the discretion, if Bell were sentenced today, to impose two consecutive sentences of no less than seven years, Bell argues that this presents an extraordinary and compelling reason for a sentence reduction.

As Judge Blake of this Court has articulated in *United States v. Bryant*, "[m]ultiple district courts have reasoned that 'the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason.'" CCB-95-202, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020) (citing *United States v. Owens*, No. 97-CR-2546-CAB, ECF No. 93, at 4 (S.D. Cal. Mar. 20, 2020) (collecting cases)); *see also, e.g.*, *United States v. Ramos*, Crim. No. PJM-04-293, ECF No. 127 (D. Md. Mar. 4, 2021) (reducing the defendant's sentence from 40 years to 15 years upon finding that the "stacking" of subsequent drug charges constituted an "extraordinary and compelling reason" to grant relief); *United States v. Currie*, Crim. No. 5:05-cr-1-4-BR

7

(E.D.N.C. Feb. 3, 2021) (same); *United States v. Redd*, 444 F. Supp. 3d 717 (E.D. Va. Mar. 16, 2020) (same). Regardless of this potentially compelling reason for relief, this Court must conduct an "individualized assessment" to determine whether relief is warranted. *McCoy*, 981 F.3d at 286. As Judge Blake of this Court has noted:

> [I]n considering a defendant's motion for sentence reduction based on subsequent changes in the law that create sentencing disparities, the court should conduct an individualized and holistic assessment of the defendant's circumstances to determine whether there are extraordinary and compelling reasons for relief. The district court may appropriately consider at least the following four factors in making such assessment: (1) whether the sentence imposed is grossly disproportionate to a sentence the defendant would likely receive if sentenced today, signifying that the sentence is "dramatically longer than necessary or fair;" (2) whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses; (3) the length of the sentence the defendant already has served; and (4) other personal characteristics of the defendant, which may include the defendant's relative youth at the time of the offense and their post-sentencing conduct in the BOP.

*United States v. Myers*, CCB-01-188, 2021 WL 2401237, at *3 (D. Md. June 11, 2021) (citing *McCoy*, 981 F.3d at 285–86).

An individualized assessment of the factors Judge Blake has articulated in *Myers* support a finding of extraordinary and compelling circumstances here. As noted in *Bryant*, a consequent change in the law surrounding § 924(c) sentencing may constitute an extraordinary and compelling reason warranting compassionate release or a reduction in sentence. *Bryant*, 2020 WL 2085471, at *3. Through the passage of the First Step Act, Congress has clarified the sentencing implications of subsequent § 924(c) charges. As Bell has noted, today, a mandatory twenty-five-year sentence may only be imposed "after a prior [§ 924(c)] conviction . . . has become final." 18 U.S.C. § 924(c)(1)(C). In the instant case, Bell's § 924(c) conviction as to Count Three was not final when he was sentenced as to Count Five. Accordingly, if Bell were

sentenced today this Court would have discretion to impose only a seven-year consecutive sentence as to Count Five. Moreover, as of the date of this opinion, Bell has already served approximately more than 13 years of his 32-year sentence. This is less than half of his sentence but is nearly the entirety of the 14-year sentence he could receive if sentenced today. Ford's 384-month sentence is therefore "grossly lengthy" compared to the sentences received for similar offenses today, which supports a finding of an extraordinary and compelling reason for a reduction in sentence.

### III.    18 U.S.C. § 3553(a) Factors

In *McCoy*, the Fourth Circuit made clear that "not all defendants convicted under § 924(c) should receive new sentences," and that "courts should be empowered to relieve some defendants of those sentences on a case by case basis." 981 F.3d at 286–87; *United States v. Eady*, No. 2:12-cr-0415-DCN-1, 2021 WL 2354930, at *2 (D.S.C. Jun. 9, 2021) ("[T]he Fourth Circuit also made clear that defendants convicted under the old § 924(c) sentencing regime do not receive relief as a matter of right."). As with any other compassionate release motion, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) Bell's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *accord Bryant*, 2020 WL 2085471, at *4–*5 (weighing

9

relevant factors to find that the defendant's sentence should be reduced to time served). On balance, these justify a reduction in the existing sentence to avoid unwarranted sentencing disparities.

First, Bell's extensive criminal history and the nature of the armed robberies require a lengthy sentence that serves the purpose of deterrence and reflects the seriousness of the underlying offense. Bell has a substantial criminal history that was noted at sentencing. In 2001, he was convicted in Maryland for a 1999 theft under $300 and was sentenced to one year and one day of incarceration. (PSR ¶ 19.) Less than a year later, he was convicted at the state level of another armed robbery charge in Baltimore County and was sentenced to five years of incarceration followed by three years of probation. (*Id.* at ¶ 21.) Following his release from prison and while still on probation, Bell was convicted in the Circuit Court for Baltimore City of possession with intent to distribute heroin. (*Id.* at ¶ 26.) He was sentenced to time served and his probation was terminated. (*Id.*) Bell's criminal history also includes six other state arrests from 1999 to 2009, all of which were dropped, *nolle prossed*, or placed on the stet docket. (*Id.* at ¶¶ 34–39.) These arrests included charges involving possession with intent to manufacture and distribute controlled dangerous substances, theft, second- and first-degree assault, threatening arson, and others. (*Id.*) Despite serving a five-year sentence for a prior armed robbery case, Bell engaged in this string of armed robberies less than two years after his release. (*Id.* at ¶¶ 1–16, 32.)  These robberies were egregious offenses during which Bell and his co-conspirators brandished guns, struck victims with the guns, and stole money from businesses engaged in interstate commerce. (*Id.* at ¶¶ 6–16.) Moreover, Bell has demonstrated a history of criminal recidivism, having committed the armed robberies he is currently

incarcerated for only a few years after being released from state custody on similar charges. Bell's substantial criminal history and record of recidivism weigh against a substantial reduction in sentence.

Bell has also accrued various infractions while in prison, including, possession of drugs or alcohol, lying or falsifying a statement, and refusing to obey orders as recent as 2020. (BOP Records, ECF No. 303-6.) Finally, this Court expressed during Bell's sentencing that his violent actions were "severe," and that the defendant's personal history and characteristics demonstrated a "high rate of danger of recidivism." (Sentencing Hr'g Tr. 24:13–21, ECF No. 303-2.) At sentencing the Court noted that Bell's sentence was largely related to the violent nature of his involvement in the robberies, his criminal history, and his risk of recidivism and the need to protect the public. (*Id.* at 24–25.) Due to the nature of Bell's involvement in multiple armed robberies, his extensive criminal history, and his prison disciplinary record, any reduction in sentence in this case will not lead to a substantially shortened sentence for Bell.

It should be noted however that during Bell's stint in federal prison, he has demonstrated a desire to rehabilitate himself. Bell has taken advantage of educational and rehabilitative courses, taking twenty-three such courses and earning his GED while incarcerated. (BOP Progress Report 1–2, ECF No. 300-3.) Bell has consistently held a job while incarcerated and has received positive work evaluations. (Bell Mot. 10, ECF No. 300.) Upon Bell's release from federal custody, he plans to earn his CDL license and reside with his father in North Carolina, away from Baltimore, the city which has become associated with his criminal history. (*Id.* at 12.) Although these efforts are laudable and demonstrate personal growth, the violent nature of Bell's crimes and his proven track record of recidivism noted

above move this Court to find that a significant reduction in sentence is unwarranted in this case.

The need to avoid unwarranted sentencing disparities among similarly situated defendants presents the most compelling reasons why this Court should reduce Bell's sentence. In this matter, Bell was sentenced with his two co-conspirators, Quindell Ford and Trevon Jones. Pursuant to a Motion for Sentence Reduction filed in Ford's case, this Court has reduced Ford's sentence from 336 months to 284 months on different grounds. *See United States v. Ford*, Crim. No. RDB-09-219, Mem. Op., filed simultaneous (D. Md. Sept. 15, 2022). In light of this Court's decision in the related matter, Bell's sentence will be accordingly reduced in tandem with Ford's to avoid unwarranted sentencing disparities between these two co-defendants.

As to Count Three, Bell was previously sentenced to 84 months imprisonment to be served consecutively with other charges. This charge carries a minimum sentence of seven years wherever a firearm is brandished but not discharged. 18 U.S.C. § 924(c)(1)(A)(ii). Bell's sentence of 84 months is the minimum sentence required under the statute for this charge. Thus, this Court will not reduce Bell's 84-month consecutive sentence on Count Three.

As to Count Five, this Court sentenced Bell to 300 months (twenty-five years) of imprisonment for his subsequent conviction under § 924(c). Bell points out that Congress, through the passage of the First Step Act, has clarified that a second conviction under § 924(c) no longer carries a mandatory twenty-five-year sentence. Bell argues that this stacking practice presents an extraordinary and compelling reason to reduce his sentence, as Bell would only face a mandatory minimum sentence of seven years if he were sentenced today. While this

may be true, considering the violent nature of Bell's crimes, his substantial risk of recidivism, and the according need to protect the public, this Court finds that the sentence imposed as to Count Five should not be reduced so substantially. However, to avoid unwarranted sentencing disparities between Bell and his co-defendant Ford pursuant to 18 U.S.C. § 3553(a)(6), Bell's sentence as to Count Five will be reduced from 300 months to 248 months. Accordingly, when served consecutively with Bell's 84-month sentence as to Count Three, Bell's total sentence will be reduced to 332 months of incarceration.

## CONCLUSION

Accordingly, for the reasons stated above, it is hereby **ORDERED** this 15th day of September, 2022, that:

1. Defendant Todd Bell's Motion for Sentence Reduction (ECF No. 300) is **DENIED** with respect to compassionate release but **GRANTED** with respect to a reduction of sentence;

2. Defendant Bell's term of incarceration is reduced to a total of 332 months;

3. All other terms and conditions remain in effect;

4. An amended Judgment and Commitment Order shall be prepared to reflect Defendant Quindell Ford's reduction in sentence; and

5. The Clerk of the Court shall send copies of this Memorandum Order to the parties.

_____/s/_____
Richard D. Bennett
United States District Judge